UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

| | |
|---|---|
| JAMES WHALEY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>T-MOBILE USA, INC. )<br>)<br>Defendant. )<br>) | Case No. 0:13-cv-31-DLB-JGW<br><br>**Filed Electronically** |

**MEMORANDUM OF LAW IN SUPPORT OF T-MOBILE USA, INC.'S MOTION
TO COMPEL ARBITRATION AND STAY CLAIM**

Pursuant to 9 U.S.C. §§ 3 and 4, Defendant T-Mobile USA, Inc. ("T-Mobile") hereby respectfully moves this Court to enter an Order: (i) compelling arbitration of Plaintiff James Whaley's claim as required by his arbitration agreement with T-Mobile; and (ii) staying litigation against T-Mobile in this matter until arbitration is complete. T-Mobile's Motion to Compel Arbitration should be granted because Plaintiff is contractually required to arbitrate, rather than litigate in court, his individual claim against T-Mobile.

### I. INTRODUCTION

T-Mobile's Terms and Conditions require Plaintiff to arbitrate the claim he attempts to assert in this litigation. As set forth more fully below, T-Mobile's Motion to Compel Arbitration and Stay Claim should be granted because:

- Plaintiff agreed to arbitrate his disputes with T-Mobile. The scope of Plaintiff's arbitration agreement is broad, encompassing all disputes with T-Mobile "in any way related to or concerning" Plaintiff's agreement with T-Mobile or any services and products provided by T-Mobile. *See* Declaration of Christopher Muzio

("Muzio Decl.") (attached hereto as Exhibit "A") at ¶ 11.

- Plaintiff's claim in this litigation falls within the scope of his arbitration agreement. Specifically, Plaintiff alleges that T-Mobile violated the Telephone Consumer Protection Act ("TCPA") by contacting Plaintiff on his cell phone using an automated telephone dialing system. *See, e.g.,* Complaint at ¶ 8. This claim falls squarely within the scope of Plaintiff's agreement to arbitrate – it relates to and concerns Plaintiff's agreement with T-Mobile, which expressly allows T-Mobile to contact Plaintiff for "any and all purposes" at his T-Mobile wireless number and in which Plaintiff further agreed that "we may contact you in any way, including, pre-recorded or artificial voice or text messages delivered by an automatic telephone dialing system, or e-mail messages delivered by an automatic e-mailing system." Muzio Decl. at ¶ 16. T-Mobile provides service to Plaintiff on the 1710 Line of Service on which Plaintiff alleges he received calls from T-Mobile.

This Court should not now relieve Plaintiff of the contractual obligation to arbitrate that he willingly undertook. Instead, under the Federal Arbitration Act ("FAA"), this Court's role is to enforce the parties' arbitration agreement and move this dispute into arbitration as quickly as possible. T-Mobile's Motion should be granted.

## II.   BACKGROUND

On May 16, 2012, Plaintiff opened a T-Mobile account at a Walmart store and chose service branded as "Walmart Family Mobile Powered by T-Mobile. Muzio Decl. ¶ 3. At that time, Plaintiff activated a T-Mobile line of service ending in 1710 (the "1710 Line of Service"). *Id.* at ¶ 2. To use that line of Service, Plaintiff was required to purchase a Family Mobile "Starter Kit." *Id.* at ¶ 4. The Starter Kit included a copy of the Family Mobile Terms and

Conditions and informed Plaintiff where he could locate the Family Mobile Terms and Conditions on the internet. *Id.* at ¶¶ 5-6. Plaintiff used the 1710 Line of Service after the May 16, 2012 activation. *Id.* at ¶ 8. He also made payments to T-Mobile for service provided to the 1710 Line of Service. *Id.*

Plaintiff agreed to T-Mobile's Family Mobile Terms and Conditions of service when he activated service in May 2012 and subsequently used and made payments for the service. *Id.* at ¶¶ 2, 7-8. The Family Mobile Terms and Conditions to which the parties are now bound require T-Mobile and Plaintiff to arbitrate "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES[.]" *Id.* at ¶ 11.

T-Mobile's Family Mobile Terms and Conditions are included in the box with the Starter Kit, which a customer is required to purchase in order to use the Family Mobile service. *Id.* at ¶¶ 4, 5. The Family Mobile Terms and Conditions inform Plaintiff at the outset that he should read the Terms and Conditions carefully because, among other things, they require arbitration of disputes:

> **Please read these T&Cs carefully.** They cover important information about the services provided to you ("Service"); your phone, handset, device, SIM card, data card, or other equipment or third party device used with the Family Mobile Service ("Device"); and any access and usage charges, taxes, fees and other charges we bill you or that were accepted or processed through your Device ("Charges"). **These T&Cs include fees for early termination and late payments, limitations of liability, privacy and resolution of disputes by arbitration instead of in court.**

*See id.* at ¶ 10, Tab 1 at 2nd unnumbered paragraph (emphasis in original).

The Terms and Conditions then prominently disclose and explain both the arbitration

3

obligation and Plaintiff's ability to opt out of its application:

> **2. * Dispute Resolution and Arbitration. WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers or third party vendors) whenever you also assert claims against us in the same proceeding. We each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the choice of law provision in Section 26). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).
>
> . . .
>
> Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION** if: (a) your claim qualifies, you may initiate proceedings in small claims court; or (b) **YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE YOU ACTIVATED SERVICE FOR THE RELEVANT LINE (the "Opt Out Deadline").** You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or completing the opt-out form located at http://myfamilymobile.com/support/dispute.aspx. **Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

*Id.* at ¶¶ 11-12, Tab 1 ¶ 2 (emphasis in original). This provision provides subscribers with simple instructions as to how they may opt out of arbitration. *See id.*

T-Mobile's arbitration agreement creates a mechanism whereby subscribers can efficiently and economically obtain resolution of disputes. T-Mobile pays all fees and expenses of arbitration for all claims that total less than $75,000. *Id.* ¶ 14, Tab 1 ¶ 2. Arbitrations are to be conducted by the American Arbitration Association ("AAA"), pursuant to its rules, including

4

consumer-friendly procedures specifically designed for consumer disputes.[1]  *Id*.  In arbitration, subscribers have the ability to obtain any relief for their individual claims that would be available in court, including statutory damages, attorneys' fees and costs, and injunctive relief.  *Id*.  T-Mobile's arbitration agreement is more than even-handed.  Although a successful subscriber is entitled to recover attorneys' fees in arbitration, T-Mobile has contractually agreed that it will not seek to recover attorneys' fees if it prevails in arbitration unless the arbitrator finds that the subscriber's claims were frivolous.  *Id.*

### III.  ARGUMENTS AND AUTHORITIES

A.  <u>The FAA Applies and Requires Enforcement of Plaintiff's Arbitration Agreement</u>.

The FAA preempts state law and requires the enforcement of arbitration agreements by expressly providing that agreements to arbitrate "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The FAA applies to any written arbitration agreement contained in a contract "'evidencing a transaction involving commerce.'"  *Id*.  The Supreme Court has expansively construed the phrase "involving commerce," interpreting it as extending the FAA's reach to the full limit of Congress' Commerce Clause power.  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995).  There is no question that the FAA applies to Plaintiff's arbitration agreement.  Indeed, the parties expressly agreed that: ". . . [T]he Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the

---

[1]  *See* Muzio Decl. ¶ 14, Tab 1 ¶ 2 (selecting AAA rules and Supplementary Procedures for Consumer-Related Disputes for all claims less than $75,000).  Under those procedures, a subscriber may choose to arbitrate based on written submissions only or in a telephonic hearing.  Exhibit "B" at pp. 6, 10 (obtained from the AAA's website on May 9, 2013).

5

choice of law provision in Section 26)." *See* Muzio Decl. ¶ 11, Tab 1 ¶ 2.[2]

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011). The FAA both "'embod[ies]'" and "'declare[s] a national policy favoring arbitration.'" *Id.* at 1749; *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The Supreme Court has interpreted the FAA "as reflecting both a 'liberal federal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 131 S. Ct. at 1745 (citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Id.* (citations omitted). This purpose is readily apparent from the FAA's text. "Section 2 makes arbitration agreements "valid, irrevocable, and enforceable as written . . . ; § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'; and § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . . ." *Id.* at 1748 (citations omitted).

---

[2] The FAA also applies because the contracts between T-Mobile and Plaintiff are contracts between citizens of different states. T-Mobile is a foreign corporation, incorporated in Delaware and having its principal place of business in Washington, and Plaintiff is a Kentucky citizen. Muzio Decl. ¶ 17; Compl. ¶ 4. Contracts between citizens of different states affect commerce, rendering the FAA applicable. *See, e.g., Bank of Am., N.A. v. Michiletti Family P'ship*, No 08-02902 JSW, 2008 WL 4571245 (N.D. Cal. Oct. 14, 2008) (court found lease involved interstate commerce where parties were citizens of different states). Moreover, Plaintiff's agreement with T-Mobile relates to and concerns the provision of wireless service to Plaintiff both inside and outside of Kentucky, further making clear that the agreement affects interstate commerce. *See generally Goldberg v. Sweet*, 488 U.S. 252, 254-55 (1989) (telecommunications industry constitutes interstate commerce); *United States v. Alvelo-Ramos*, 957 F. Supp. 18, 21 (D.P.R. 1997) (cellular telephone is an instrumentality of interstate commerce).

6

Time after time, the United States Supreme Court has recognized this strong public policy in favor of arbitration. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (noting the pro-arbitration purposes of the FAA); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (enforcing agreement to arbitrate and holding that Congress intended the FAA "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts,'" quoting *Gilmer*, 500 U.S. at 24); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974) (The FAA expresses Congress' intent to reverse "centuries of judicial hostility to arbitration agreements," quoting H.R. Rep. No. 68-96, at 1, 2 (1924)); *see also Randolph v. Green Tree Fin. Corp.-Ala.*, 244 F.3d 814, 818-19 (11th Cir. 2001) ("According to the Supreme Court, the last time this case was before us we made the mistake of giving too little weight to the FAA's pro-arbitration policy. We decline to make the same mistake again"). Kentucky law is in accord. *See Louisville Peterbilt, Inc. v. Cox,* 132 S.W.3d 850, 854 (Ky. 2004) ("Kentucky and national policy have generally favored agreements to arbitrate.").

To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ."). Thus, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Louisville Peterbilt,* 132 S.W.3d at 855 ("The FAA establishes that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'").

The Supreme Court has instructed that courts should "'move the parties to an arbitrable

7

dispute out of court and into arbitration as quickly and easily as possible.'" *Preston*, 552 U.S. at 357. "'A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results.'" *Concepcion*, 131 S. Ct. at 1749. Accordingly, this Court should grant T-Mobile's Motion if T-Mobile establishes that: (i) Plaintiff entered into a written agreement to arbitrate; and (ii) Plaintiff's claim falls within the scope of his agreement to arbitrate. *See* 9 U.S.C. §§ 3, 4. For the reasons set forth below, all of the requisite elements are satisfied in this case, and the Court should require Plaintiff to arbitrate his claim.

B.   Plaintiff Agreed to Arbitrate His Claim with T-Mobile.

Plaintiff entered into an agreement with T-Mobile in which he expressly agreed to arbitrate, instead of litigate in court, the claim asserted in this lawsuit. When Plaintiff entered into T-Mobile service at Walmart, he purchased a "Starter Kit," which included a SIM card, Starter Guide, and the Family Mobile Terms and Conditions. Muzio Decl. ¶ 5. The outside of the Starter Kit noted that the Terms and Conditions were included in the Starter Kit. *Id.* at ¶ 6. The "Starter Kit" packaging also alerted Plaintiff that the Family Mobile Terms and Conditions were available online by telling Plaintiff to see the "Terms and Conditions (including arbitration provision), as established by T-Mobile, at www.myfamilymobile.com for additional information." *Id.* at ¶ 6. Thus, Plaintiff received the Family Mobile Terms and Conditions and was directed to where he could obtain an additional copy of the Terms of Conditions if he so wished. He was also informed about the arbitration provision and the Family Mobile Terms and Conditions on the Starter Kit packaging.

Plaintiff agreed to the Family Mobile Terms and Conditions by activating and using service on the 1710 Line of Service. *Id.* at ¶ 8. He also agreed to the Family Mobile Terms and Conditions by paying for his service. *Id.*

The Terms and Conditions themselves reference the arbitration agreement in the second

8

unnumbered paragraph and set forth the actual arbitration agreement in the second numbered paragraph. *Id.* at ¶¶ 10-11. Although Plaintiff had the opportunity to opt out of the arbitration obligation, he did not do so. *Id.* at ¶ 13. He is thus bound by his arbitration agreement.

C.     Plaintiff's Claim Falls Within the Scope of Plaintiffs' Arbitration Agreement.

Plaintiff's arbitration agreement provides that:

> **ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.**

Muzio Decl. at ¶ 11, Tab 1 ¶ 2 (emphasis in original). Plaintiff's claim falls squarely within the scope of his arbitration agreement, and must be arbitrated.

Plaintiff's claim in this litigation relates to and concerns his agreement with T-Mobile. Plaintiff premises his claim on allegations that T-Mobile "intentionally harassed and abused Plaintiff on numerous occasions by their agents and representatives calling Plaintiff's cellular telephone number[.]" Compl. ¶ 8. Plaintiff further premises his claim on the allegation that T-Mobile called his cellular telephone number (which received service from T-Mobile) using an automated telephone dialing system. Compl. ¶ 9.

There can be no question that this claim relates to and concerns Plaintiff's agreement with T-Mobile. That is because the Family Mobile Terms and Conditions (which constitute Plaintiff's agreement with T-Mobile) reflect Plaintiff's consent to the receive any and all calls from T-Mobile.[3] More specifically, in the Terms and Conditions, Plaintiff agreed as follows:

> "You expressly consent to be contacted, for any and all purposes, at any telephone number, or physical or electronic address you

---

[3] Plaintiff's allegation that he received calls from T-Mobile intended for another customer does not alter this analysis. The critical issue remains that Plaintiff agreed to receive any and all calls from T-Mobile without regard to the substance of the communication.

9

> provide to us or that we provide to you. You agree that we may contact you in any way, including, pre-recorded or artificial voice or text messages delivered by an automatic telephone dialing system, or e-mail messages delivered by an automatic e-mailing system.

Muzio Decl. ¶ 16, Tab 1 ¶ 15.  Plaintiff's claim cannot be maintained without reference to Plaintiff's agreement with T-Mobile because the agreement provides T-Mobile with an absolute defense to Plaintiff's TCPA claim.  47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice[.]"); *Pugliese v. Professional Recovery Service, Inc.*, No. 09-12262, 2010 WL 2632562, *7 (E.D. Mich. June 29, 2010) (stating that a defendant can raise prior express consent as a defense to a TCPA claim).  As such, Plaintiff's claim unquestionably relates to and concerns Plaintiff's Agreement with T-Mobile.  *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003) (dispute likely falls outside the scope of an arbitration agreement only if the "action could be maintained without reference to the contract or relationship at issue").  Because Plaintiff's claim falls squarely within the scope of his arbitration obligations, it must be arbitrated.  *See Concepcion,* 131 S.Ct. at 1748–49; *see also Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

D.   <u>Plaintiff's Arbitration Agreement is Valid and Enforceable Under Kentucky Law.</u>

Although the FAA and the strong federal policy in favor of arbitration apply to Plaintiff's arbitration agreement, Kentucky law applies to determine whether Plaintiff's arbitration agreement is enforceable.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (federal courts "should apply ordinary state-law principles that govern the formation of contracts" in determining enforceability of an arbitration agreement); *see also* Muzio Decl. ¶ 15,

Tab 1 ¶ 26 (agreement is governed by the law in which Plaintiff's billing address is located); Compl. ¶ 4 (identifying Plaintiff as a Kentucky resident). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004)).

Under Kentucky law, courts in contract actions should "endeavor to give effect to the parties' intent as expressed by the ordinary meaning of the language they employed. *North Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 105 (Ky. 2010) (enforcing arbitration clause where contract demonstrated parties' intent to arbitrate). In this case, Plaintiff's intent to arbitrate could not be more plain. The arbitration agreement expressly provides that "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION[.]"[4] *See* Muzio Decl. ¶ 11, Tab 1 ¶ 2.

E.   Stay of the Action Is Appropriate Because Plaintiff's Claim Must Be Submitted to Arbitration.

The Court should stay this case because Plaintiff's claim must be submitted to arbitration. The FAA provides that, once satisfied that the suit is referable to arbitration, a court "**shall** on application of one of the parties ***stay the trial of the action*** . . ." 9 U.S.C. § 3. (emphasis added). This section requires courts to stay judicial proceedings, upon application of a party, if the court

---

[4]   T-Mobile's arbitration agreement is fully enforceable and is not unconscionable. If Plaintiff seeks to avoid his arbitration obligations, he bears the burden of proving a valid defense. *Peterbilt*, 132 S.W.3d at 855 ("It is true that the party seeking to enforce an agreement has the burden of establishing its existence, but once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement."); *Davis v. Global Client Solutions, LLC*, No. 3:10–CV–322–H, 2011 WL 4738547, at *2 (W.D. Ky. Oct. 7, 2011) (noting the party resisting arbitration has the burden of establishing a valid defense). If Plaintiff raises any defenses to enforcement, T-Mobile will respond to them in its Reply.

11

determines that the matter raised is one which should have been referred to arbitration. Because the Plaintiff's arbitration agreement requires him to arbitrate the claim asserted here, Section 3 applies, and this case should be stayed.

## IV. CONCLUSION

Plaintiff is contractually required to arbitrate, rather than litigate in court, his individual claim against T-Mobile. T-Mobile's Motion to Compel should thus be granted.

Dated: May 10, 2013.

        Respectfully submitted,

        */s/ Daniel E. Danford*
        Daniel E. Danford
        STITES & HARBISON, PLLC
        250 West Main Street, Suite 2300
        Lexington, Kentucky 40507-1758
        Telephone: (859) 226-2292
        Facsimile: (859) 425-7909
        ddanford@stites.com

        Kristine McAlister Brown (pro hac vice pending)
        ALSTON & BIRD LLP
        1201 West Peachtree Street
        Atlanta, Georgia 30309-3424
        Telephone: (404) 881-7000
        Facsimile: (404) 881-7777
        kristy.brown@alston.com

        COUNSEL FOR T-MOBILE USA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    Frank M. Jenkins, III    fmj@frankjenkinslaw.com

    Michael J. Vitoria    mvitoria@forthepeople.com

/s/ *Daniel E. Danford*_____
Daniel E. Danford

COUNSEL FOR T-MOBILE USA, INC.