UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

JAMES WHALEY,

Plaintiff,

CASE NO.: 0:13-cv-31-DLB-JGW

-vs-

T-MOBILE USA, INC.,

Defendant.
_____/

### PLAINTIFF, JAMES WHALEY'S, RESPONSE IN OPPOSITION TO DEFENDANT, T-MOBILE USA, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CLAIM AND INCORPORATED MEMORANDUM OF LAW

The Plaintiff, JAMES WHALEY, by and through the undersigned counsel, hereby responds in opposition to Defendant, T-MOBILE USA, INC's. (hereinafter "T-MOBILE"), [Doc. 8] Motion to Compel Arbitration and Stay Claim, and would state as follows:

### I. INTRODUCTION

This action involves Plaintiff's claims against Defendant for Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* In particular, Plaintiff has specifically, and exclusively, alleged that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) through its telephone calls to Plaintiff's cellular telephone concerning a past due account NOT BELONGING to the Plaintiff, but instead to a "Thomas Latrell." (See [Doc. 1] Plaintiff's Complaint ¶¶ 10-13). Defendant's [Doc. 8] Motion should be denied because there is no valid agreement to arbitrate between Plaintiff and Defendant pertaining to the *debt and/or account of "Thomas Latrell"*, the scope of the purported arbitration

1

agreement does not encompass the claims asserted herein; and the claims asserted, the telephone calls made by Defendant in violation of the TCPA had nothing to do with Plaintiff's wireless agreement, his wireless service, his Rate Plan, or his wireless billing. In short, Defendant is attempting to use the pure happenstance that Plaintiff is a T-Mobile customer in order to force arbitration of a matter unrelated to his personal wireless services agreement.

## II. BACKGROUND

Plaintiff, at all times material, was the subscriber, regular user and carrier of the cellular telephone with a corresponding cellular telephone number of 859-907-1710. ([Doc. 1], ¶ 8). Beginning in approximately July of 2012, Defendant began making debt collection telephone calls to Plaintiff's cellular telephone number using an "automatic telephone dialing system", or using an artificial or prerecorded voice, without Plaintiff's prior express consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii). ([Doc. 1], ¶¶ 9-11). All of the telephone calls made by Defendant to Plaintiff's cellular telephone number were concerning a past due debt and/or an account of a different customer of Defendant, a customer by the name of "Thomas Latrell." ([Doc. 1], ¶¶ 10-13). Plaintiff is not "Thomas Latrell," nor has ever gone by that name. Plaintiff is not now, nor has ever been, a signatory to any agreement by and between Defendant and "Thomas Latrell," or in any way related to any T-Mobile wireless services provided by Defendant to "Thomas Latrell." Plaintiff is a T-Mobile customer, but is not past due on his account with Defendant.

In its motion to compel arbitration, Defendant has quite shockingly decided simply not to mention any of the above issues or that its calls to Plaintiff were directed at

a different individual's responsibilities under a completely separate wireless services agreement. Importantly, however, Defendant does not dispute, either in its [Doc. 8 and 8-1] Motion or in its attached [Doc. 8-2] Affidavit of Christopher Muzio, that the calls its made to Plaintiff's cellular telephone, as alleged in his Complaint, were concerning a past due account of a "Thomas Latrell" and accordingly, does not dispute that its calls as alleged in the Complain had nothing to do with Plaintiff's agreement and/or account.

### III. ARGUMENTS AND AUTHORITIES

#### A. Arbitration is Improper and the Subject Dispute Does Not Fall within the Scope of the Arbitration Agreement

Defendant has cited no authority to this Court for the proposition that it is proper to compel an individual to arbitration when the conduct in question concerns defendant's conduct on another customer's account. Instead, Defendant has taken great pains in its Motion to omit any reference to the fact (and the pled factual allegations) that Plaintiff's claims involve Defendant's unauthorized automated telephone calls related solely to a past due account of a "Thomas Latrell." (See [Doc. 8-1, pp. 9-12; *compare* [Doc. 1, ¶¶ 9-14]).

No matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration. *Simon v. Pfizer, Inc.*, 398 F.3d 765, 775 (6th Cir. 2005)(quoting *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972). That common sense approach must be applied to this case so as to deny Defendant's Motion. Before a Court compels an unwilling party to arbitrate, it must first determine whether the dispute is arbitrable by finding whether a

3

valid agreement to arbitrate exists between the parties and whether the dispute at issue falls within the substantive scope of that agreement. *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008); *Bratt Enters. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. Ohio 2003)(quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Here, there exists no valid agreement between Plaintiff and Defendant to arbitrate disputes which concern the amounts owed to Defendant by an individual unrelated to the Plaintiff, and concerning that individuals separate agreement with Defendant. Secondly, the subject dispute does not fall within the scope of the arbitration clause in Plaintiff's agreement with defendant, because the dispute does not relate, in any way, to Plaintiff's agreement, the services or devices provided to Plaintiff under the Agreement, or any billing dispute pertaining to Plaintiff's Agreement. Thirdly, the narrowly tailored arbitration provision does not touch on, nor involve, matters covered by the agreement.

1. *No Valid Agreement to Arbitrate Exists*

Defendant has not produced, nor even alluded to, any agreement which gives rise the calls it made on the past due debt of "Thomas Latrell." To this date, it is unknown as to what that past due debt even relates to; whether it be related to a similar wireless service plan, a completely different contract, or even perhaps a judgment obtained by Defendant against "Thomas Latrell." One thing is very clear though, it does not relate, in any way, to the Plaintiff, and Plaintiff is not a signatory to any such agreement by and between Defendant and "Thomas Latrell." Plaintiff concedes that if this dispute concerned Plaintiff's past due debt, the wireless services provided by Defendant to Plaintiff, Plaintiff's "Service Agreement," or Plaintiff's "Rate Plan" (as those terms are defined by

4

the Agreement), then there would exist a valid agreement to arbitrate such a dispute. But here, the dispute exclusively involves calls made to Plaintiff's cellular telephone for an unrelated "Thomas Latrell."

While it should have been clear to Defendant, having issued the cellular telephone number in question to the Plaintiff, that Plaintiff was not "Thomas Latrell," it must be pointed out what is likewise conspicuously omitted from the [Doc. 8-2] Affidavit of Christopher Muzio submitted by Defendant in support of its Motion. Mr. Muzio has apparently reviewed the account of Plaintiff in detail, providing testimony by way of his Affidavit about the type of wireless services account of Plaintiff, the type of "Starter Kit" provided to Plaintiff, the terms and conditions of the T-Mobile service plan provided to Plaintiff, when Plaintiff activated his service, and how Plaintiff made payments to Defendant under his plan. (See [Doc. 8-2], generally). However, in his Affidavit, Mr. Muzio has purposefully stayed away from the very basic, but unavoidably fatal facts, to wit: the calls made by Defendant did not concern Plaintiff or any agreement with Plaintiff; Plaintiff was never past due on his account with Defendant; and the calls concerned a "Thomas Latrell."

It cannot be refuted that Plaintiff never signed any agreement with Defendant concerning an account or past due debt of "Thomas Latrell." Non-signatories to arbitration agreements may be bound to an arbitration agreement under normal contract and agency principles. *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). But here, not only did Plaintiff not sign any agreement related to the debt or account of "Thomas Latrell," he certainly does not stand in the shoes of "Thomas Latrell" as to the agreement through which Defendant seeks to collect the debt owed by "Thomas

Latrell." *Id.* at 625. The only authority binding a non-signatory to an arbitration agreement concerns factual situations, unlike here, when it is the non-signatory that attempts to compel arbitration and then, only under five (5) recognized theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) equitable estoppel. *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citing *Thomas-CSF v. American Arbitration Ass'n.*, 64 F.3d 773, 776 (2d Cir. 1995). Equitable estoppel appears to be the most heavily relied-upon assertion, but it applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims, or when the underlying action is based on the non-signatory's breach of the obligations and duties assigned to it in the agreement. *Eaves-Leanos v. Assurant, Inc., et al.*, 2008 WL 1805394 (W.D. Ky. April 21, 2008)(citing to *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999) and *Hagan v. Greenpoint Credit Corp.*, 2007 WL 2258866 at *8 (E.D. Ky. Aug. 3, 2007)). Here, none of the five (5) theories even remotely apply to the facts of this case, and none have been asserted by Defendant as a basis to compel arbitration; which underscores the absurdity of attempting to compel arbitration under these facts. Indeed, Defendant's argument are as absurd as if Defendant attempted to file a lawsuit or demand for arbitration against Plaintiff, pursuant to the terms of Plaintiff's Agreement with Defendant, for the breach by "Thomas Latrell" or related to the past-due debt owed by "Thomas Latrell" of his separate contract with Defendant.

Arbitration agreements may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration. *Kruse v. AFLAC International, Inc.*, 458 F.Supp.2d 375 (E.D. Ky

2006(citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003). Any consideration flowing between Plaintiff and Defendant concerned exclusively the wireless services provided by Defendant to Plaintiff, and the amount that Plaintiff paid Defendant for that wireless service. There is no evidence of any consideration given by Plaintiff to Defendant, that would allow Plaintiff to be harassed by Defendant in its automated call attempts aimed to collect a debt owed by an individual other than Plaintiff or on an account unrelated to Plaintiff's account.

2. *The Subject Dispute Does Not Fall Within the Scope of the Arbitration Clause*

The Federal Arbitration Act ("FAA"), in pertinent part at 9 U.S.C. § 2, provides as follows:

> **Validity, irrevocability, and enforcement of agreements to arbitrate**
>
> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter ***arising out of such contract or transaction***, or the refusal to perform ***the whole or any part thereof***, or an agreement in writing to submit to arbitration ***an existing controversy arising out of such a contract, transaction, or refusal***, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (9 U.S.C. § 2, *emphasis added*).

Here, the dispute as pled specifically in Plaintiff's [Doc. 1] Complaint involves automated debt collection calls made erroneously to Plaintiff's cellular telephone on an account of a "Thomas Latrell." (See [Doc. 1], ¶¶ 9-14). It is only those calls, made to Plaintiff's cellular telephone for the debt of "Thomas Latrell", that comprise the claims made against Defendant in this action. (See [Doc. 1], ¶¶ 9-14). Those calls in no way arise out of Plaintiff's contract or transaction with Defendant for Plaintiff's wireless service.

Additionally, Plaintiff's actual agreement with Defendant pertains exclusively to

7

the wireless services provided only to Plaintiff and not in any way to a separate contract with "Thomas Latrell." In particular, the contract defines "Agreement" as follows:

> *Your* wireless service is provided by T-Mobile USA, Inc. including its affiliates, assignees, and agents ("T-Mobile"). *Your* agreement for wireless service branded as "Walmart Family Mobile Powered by T-Mobile" ("Family Mobile") is with T-Mobile, and includes these Terms and Conditions ("T&Cs"), *your* Service Agreement, applicable supplemental terms and conditions, and *your* Rate Plan terms, which are available online and at store locations (collectively, "Agreement").
>
> ([Doc. 8-2], p. 9 of 44, *emphasis added*).

As can be seen, the above language specifically recognizes that the Plaintiffs contract with Defendant is intended to encompass only the Plaintiff's **personal** relationship with the Defendant. Consequently, the "Dispute Resolution and Arbitration" provision in the Agreement, which provides as follows, must be interpreted in the same light:

> 2. * **Dispute Resolution and Arbitration. WE AGREE THAT, EXCEPT AS PROVIDED BELOW ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers or third party vendors) whenever you also assert claims against us in the same proceeding. We also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the choice of law provision in Section 26)....
>
> ([Doc. 8-2], p. 9 of 44).

Clearly, the dispute here of unwanted "autodialer" calls made to Plaintiff's cellular telephone concerning a past due account of "Thomas Latrell" in no way relates or concerns Plaintiff's wireless agreement, the wireless services provided to Plaintiff, Plaintiff's cell phone (device), Plaintiff's Rate Plan, or any billing dispute connected to

8

the terms of Plaintiff's Agreement. Under the reasoning argued by Defendant necessary to expand the scope of the Arbitration clause to cover the facts of this case, the Plaintiff's Agreement would require arbitration for any dispute that has some remote, tangential connection with T-Mobile, and simply because it involved T-Mobile as a defendant. For instance, under this flawed reasoning, arbitration would be appropriate if a T-Mobile employee negligently operated a T-Mobile vehicle and crashed a car into, and injuring, Plaintiff. Or even more absurd, using this flawed reasoning, arbitration would be appropriate in a tort action involving circumstances where a T-Mobile employee repeatedly used Plaintiff's T-Mobile cellular telephone to beat Plaintiff over the head with it.

When considering Defendant's erroneously expansive arguments, the Court should also take into consideration the nature of the transaction that led to the "agreement" between Plaintiff and Defendant. Specifically, this is not a situation where the parties sat around a table and signed an agreement after negotiating its terms. Rather, what happened here is that Plaintiff pulled the package containing the phone off a rack at Wal-Mart, paid for the phone service, and used the phone. In light of the above facts, the arbitration clause should be interpreted conservatively and with a view towards protecting the reasonable commercial expectations of the Plaintiff that the agreement to arbitrate would be limited to matters concerning his personal contractual arrangement with T-Mobile. Here, Defendant's contention that the arbitration clause should be interpreted to include matters pertaining to another customer of T-Mobile quite simply departs from the realms of common sense.

B. The Dispute Does Not Touch on the Parties' Wireless Service Agreement

The subject arbitration provision is not a broad arbitration provision. It does not say that all matters and disputes between the parties should be submitted to arbitration. Instead, the subject arbitration provision specifically carves out claims or disputes "... **IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, ...**" ([Doc. 8-2], p. 9 of 44). "Agreement", as defined by the parties' contract, includes Plaintiff's T-Mobile wireless service, his "Service Agreement" related to his wireless service, and his "Rate Plan" for that wireless service. ([Doc. 8-2], p. 9 of 44). It does not appear that Defendant is contending that Plaintiff's TCPA action is a dispute concerning the "device" or "product" simply because Defendant placed illegal automated calls to his cellular telephone, and it should not, because this action does not involve a claim related to a defective cell phone, a product liability action, or anything of the sort. The aforementioned areas are specifically set forth in the arbitration provision and as such, the provision is not an extremely broad arbitration provision for which further inquiry into the intended scope is required. See *First Union Real Estate Equity & Mtg. Investments v. Crown American Corp.*, 23 F.3d 406 (6th Cir. 1994).

If, however, the Court finds that the subject arbitration provision is an extremely broad arbitration provision, then inquiry should be made by the Court to whether the allegations underlying Plaintiff's claim or its defenses involve matters covered by the agreement. *Electrolux Home Products, Inc. v. Mid-South Electronics, Inc. et al.*, 2008 WL 3493466 *3 (E.D. Ky Aug. 11, 2008); *First Union Real Estate Equity & Mtg. Investments v. Crown American Corp.*, 23 F.3d 406 (6th Cir. 1994)(citing to *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 622 n. 9, 624 n. 13 (1985). Here, nothing in Plaintiff's Complaint related to Defendant's debt collection efforts on the debt allegedly owed by "Thomas Latrell" pursuant to a *separate agreement* involve matters covered by Plaintiff's wireless service agreement. Defendant asserts, erroneously, that because there exists the following provision in Plaintiff's wireless service agreement, that such a provision serves as an absolute defense to Plaintiff's TCPA action under a theory of "prior express consent":

> You expressly consent to be contacted, for any and all purposes, at any telephone number, or physical or electronic address you provide to us or that we provide to you. You agree that we may contact you in any way, including, pre-recorded or artificial voice or text messages delivered by an automatic telephone dialing system, or e-mail messages delivered by an automatic e-mailing system. ([Doc. 8-2], p. 14 of 44).

As will be explained herein, Defendant's cursory assertion that the aforementioned text serving as Plaintiff's "prior express consent" in this TCPA action involving unsolicited *debt collection calls to a cellular telephone* is misleading and erroneous, as a matter of law.

The TCPA makes it unlawful (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged for the call. 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to establish a prima facie case under § 227(b)(1)(A), a plaintiff must show that: "1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system and/or leaving an *artificial or prerecorded message, and (3)* without the prior express consent of the

recipient." *Harris v. World Financial Network National Bank, et al.*, 867 F.Supp.2d 888 (E.D. Mich. April 3, 2012); *Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562 (E.D. Mich. June 29, 2010). The TCPA is essentially a strict liability statute which imposes liability for erroneous unsolicited calls. *Harris v. World Financial Network National Bank, et al.*, 867 F.Supp.2d 888 (E.D. Mich. April 3, 2012)(citing to *Alea London, ltd. V. American Home Services, Inc.*, 638 F.3d 768, 776 (11th Cir. 2011), quoting *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008).

Contrary to Defendant's assertion, "prior express consent" in a TCPA action must have been given by the consumer to the creditor or debt collector ***during the transaction that resulted in the debt owed***. *Harris v. World Financial Network National Bank, et al.*, 867 F.Supp.2d 888 (E.D. Mich. April 3, 2012)(citing to *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of* 1991, F.C.C. 07-232, 23 F.C.C.R. § 559 (Dec. 28, 2007; released Jan. 4, 2008). The TCPA gives the Federal Communications Commission ("FCC") the authority to prescribe regulations and implement the TCPA's provisions. 47 U.S.C. § 227(b)(2) and *Harris v. World Financial Network National Bank, et al.*, 867 F.Supp.2d 888 (E.D. Mich. April 3, 2012). In the aforementioned FCC ruling, the FCC held:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party ***in connection with an existing debt*** are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express by the cell phone subscriber to be contacted at that number ***regarding the debt***. *Id.* at 564 (emphasis added).
>
> \*\*\*
>
> We emphasize that prior express consent is deemed to be granted ***only if the wireless number was provided by the consumer to the creditor, and***

12

> *that such number was provided during the transaction that resulted in the debt owed. … Id.* at 565 (emphasis added).

Thus, "…the FCC has determined that 'prior express consent' will be found whenever a person has provided his cell number to a creditor in connection with the transaction that resulted in the debt." *Mais v. Gulf Coast Collection Bureau, Inc.*, -- F. Supp. 2d ---, 2013 WL 1899616 (S.D. Fla. May 8, 2013)(citing to *In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of* 1991, 23 F.C.C.R. 559 (2008)); see also, *Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1316 (S.D. Fla. 2012) and *Buslepp v. B & B Entertainment, LLC*, 2012 WL 4761509 (S.D. Fla. 2012). Here, there could never be any argument that Plaintiff gave his "prior express consent" to the Defendant concerning the specifically alleged automated debt collection calls of Defendant for the debt of "Thomas Latrell," simply because Plaintiff is not "Thomas Latrell" and owes no debt to Defendant. Plaintiff is not a signatory to any contract, agreement or other transactional document that resulted in the debt allegedly owed by "Thomas Latrell."

Further, interpreting the contract in the manner advanced by Defendant would lead to an absurd result. By Defendant's interpretation, the Plaintiff (or any T-Mobile wireless customer for that matter) in signing this form of a wireless service agreement, would be authorizing the Defendant to place countless automated telephone dialer calls to his/her cellular telephone related to any debt owed by any other person or entity that may be indebted to Defendant. Plaintiff's Complaint is specific, and particularly only seeks recovery for the Defendant's TCPA violations for the automated calls it made to Plaintiff's cellular telephone concerning the debt owed by "Thomas Latrell." In

determining the arbitrability of claims, the court should focus on the factual allegations in the complaint rather than the legal causes of action asserted. *Electrolux Home Products, Inc. v. Mid-South Electronics, Inc. et al.*, 2008 WL 3493466 *3 (E.D. Ky Aug. 11, 2008)(citing to *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir. 1987). Here, factually, Plaintiff's claims have nothing to do with his separate wireless service agreement.

## IV.  CONCLUSION

Wherefore, based on the foregoing, Plaintiff respectfully requests that this Honorable Court deny Defendant's [Doc. 8] Motion, and for such other and further relief as appears to this Court to be just and proper in the premises.

## CERTIFICATE OF SERVICE

I hereby certify that on May 30th, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF System, which will send a notice of electronic filing to the following:

Daniel E. Danford, Esq.      ddanford@stites.com

Kristine McAlister Brown, Esq.   kristy.brown@alston.com

/s/ Michael Vitoria
Michael J. Virtoria, Esquire
Morgan & Morgan, P.A.
One Tama City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
Florida Bar #: 0135534
Email: mvitoria@forthepeople.com


/s/ Frank M. Jenkins, III
Frank M. Jenkins, Esquire
Kentucky Bar No.: 83476
Frank Jenkins Law Office
631 E. Main Street
Lexington, KY 40508
Telephone: (859)389.9344
Fax: (859)253-0928
Email:fmj@frankjenkinslaw.com